**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **JOANN SMITH** | § | |
| | § | |
| *Plaintiff*, | § | **CIVIL ACTION NO:** |
| | § | **5:21-CV-01154 - JKP−RBF** |
| **v.** | § | |
| | § | |
| **HONORABLE FRANK KENDALL,** | § | |
| **IN HIS OFFICIAL CAPACITY AS** | § | **JURY DEMANDED** |
| **SECRETARY OF THE UNITED STATES** | § | |
| **AIR FORCE** | § | |
| | | |
| *Defendant*. | | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

NOW COMES Plaintiff Joann Smith (hereinafter referred to as "Plaintiff") in the above-referenced matter, complaining of and about Defendant the United States Air Force (hereinafter referred to as "Defendant"), and files this Third Amended Complaint, showing the following to the Court:

### I. PARTIES

1.     Plaintiff Joann Smith is an individual residing in San Antonio, Bexar County,Texas. Plaintiff was employed by Defendant the United States Air Force. Plaintiff is a citizen ofthe State of Texas and of the United States.

2.     Defendant is Honorable Frank Kendall, Secretary of the United States Air Force.

3.     The head of the Department of the Air Force is Honorable Frank Kendall, Secretary of the Air Force. He is sued in his official capacity.

4.     Defendant identified herein as the United States of America, and the Defendant Federal

Agency, identified herein as the Agency entitled: The United States, Department of the Air Force. Service may be effectuated on the Defendant by serving the Honorable Frank Kendall, in his official capacity as Secretary, US Department of the Air Force by registered and/or certified mail, and to the legal representatives of the United State as "Respondent Superior" and to its subordinate agency.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under the following federal statute: (a) Title VII of the Civil Rights Act of 1964 (as amended) (which  is codified in 42 U.S.C § 2000e-2(a) and 2000e-3(a)) (hereinafter "Title VII"); (b)Americans with Disabilities Amended Act ("ADAAA"), 42 U.S.C. § 12101 *et seq.,* and (c) the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

6.      Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(a), because this is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

## III. FACTS

7.      On December 18, 2018, Plaintiff interviewed for the Logistics Management Supervisor position for Building Number 2081 at Lackland AFB. After the panel interview questions concluded, Plaintiff took a drink of water when Ms. Barbara Salazar (hereinafter "Ms. Salazar), GG-0346 Section Chief, told the panel that "[Plaintiff] had to drink some water right nowbecause she is disabled." On or about January 2019, Plaintiff reported the incident to Sylvia Reynolds (hereinafter "Ms. Reynolds"), GG-346-14 Chief of Air and Ground COMSEC ProductsSection and Second Level Supervisor.

8.      On January 16, 2019, Plaintiff was subjected to retaliation when she was forced totake a urine test after her repeated refusals to the sexual advances by Mr. Roel Olvera (hereinafter"Mr. Olvera"), GG-1101-13 Program Manager and co-worker.

9.      Later that same day, Plaintiff overheard Mr. Robert Frei (hereinafter "Mr. Frei"), GG-346-13 Chief of Key Management Operation and Acting Section Chief, tell Mr. Olvera to go do something unknown. In response, Mr. Olvera stated, "but if I do that then [Plaintiff] will not want to go out with me." Shortly after Plaintiff overheard the conversation, Mr. Frei told Plaintiff that because Plaintiff is "mixed" that she cannot go out with Mr. Olvera.

10.     That same day, Mr. Carl Salas (hereinafter "Mr. Salas"), GG-346-13 Chief of COMSEC Systems Sections and Acting Second Level Supervisor, and Mr. Frei looked at Plaintiff's hand and said they assumed Plaintiff was getting a divorce because her wedding band was not on her finger. Mr. Frei stated, "I got her now."

11.     On January 16, 2019, during an HNCC, hosted Christmas Luncheon. Mr. Frei walked over to where Plaintiff was seated at a table and inappropriately stared at Plaintiff's breasts. Plaintiff ignored Mr. Frei and waited for him to leave. This incident was reported to Ms. Reynoldson January 18, 2019.

12.     Sometime in February 2019, Plaintiff overheard Mr. Edward Almaguer (hereinafter "Mr. Almaguer"), contractor, call Ms. Roslyn Golding (hereinafter "Ms. Golding", co-worker, to convince Ms. Golding to tell Plaintiff to have intercourse with Mr. Olvera. That same day, Mr. Almaguer told Plaintiff that he wanted to call her husband and tell him that himself, Mr. Olvera, and other men at work wanted her.

13.     Sometime in February 2019, Plaintiff overheard Ms. Ruth Flores (hereinafter "Ms. Flores), GG-036012 Logistics Management Specialist, tell Mr. Olvera "Do not go for [Plaintiff] because she has broken injuries from an auto accident." This implied to Plaintiff that her co-workers and supervisors discriminated against her based on a perceived disability.

14.     Sometime in February 2019, Mr. Olvera whistled towards the direction of the Plaintiff when she walked by Mr. Olvera's office. Mr. Gary Koch (hereinafter Mr. Koch), co-worker, witnessed this incident.

15.     On February 25, 2019, Plaintiff overheard Mr. Olvera confirm to Mr. Tony Brown (hereinafter "Mr. Brown"), co-worker, that he had intercourse with Ms. Loretta Lopez (hereinafter "Ms. Lopez"), GG-0346012 Logistics Management Specialist and co-worker.

16.     On February 28, 2019, Ms. Reynolds, issued Plaintiff an Oral Admonishment addressing Plaintiff's objection to the rumors spread about her marriage.

17.     On April 22, 2019, Ms. Flores communicated to Plaintiff that she knows some female co-workers go for the sexual advances because they get more benefits and receive less work.

18.     That same day, Mr. Olvera continued to get closer to Plaintiff's cubicle, despite the refusal of the unwelcome sexual advance. Mr. Olvera told Mr. Mario Pastrano (hereinafter "Mr. Pastrano), co-worker, that "[Plaintiff] always tell me no." Ms. Felicia Griffin (hereinafter "Ms. Griffin", co-worker, and Ms. Golding were witnesses to this incident.

19.     On April 24, 2019, Mr. Olvera noticeably stared at Plaintiff's breasts and smiled when Plaintiff told him "No." In response, Mr. Olvera said "You are acting that way because you have never been with anyone but your husband."

20.     On May 6, 2019, Mr. Jesus Zuniga (hereinafter "Mr. Zuniga"), GG-346-13 Chief of Foreign military Sales and First Level Supervisor, and Mr. Salas issued Plaintiff a Proposed Reprimand Action.

21.     On May 10, 2019, Mr. Zuniga and Mr. Frei issued Plaintiff a Verbal Counseling Memorandum for Record. Shortly after, Mr. Zuniga pointed his finger at Plaintiff with his thumbs up, winked at Plaintiff, and said "Yes." to Mr. Carlos Ramirez, co-worker, as he was walking by. In response, Plaintiff stated "No." and shook her head in a declining manner.

22.     That same day, Ms. Lopez told Plaintiff that she had been assigned a heavy work load because of her constant "no" to the sexual advances by Mr. Olvera.

23.     On May 14, 2019, Mr. Olvera told Mr. David Ramirez, contractor, during an All Call in

4

Room 260 of Building 1530 in JBSA-Lackland "I want her." as he pointed in the directionof Plaintiff. Shortly after the meeting, Mr. David Ramirez approached Plaintiff to view her collegering and indicated that the ring was the reason for the sexual advances towards Plaintiff.

24.     On May 16, 2019, Mr. Olvera and Ms. Lopez were having a discussion near Plaintiff's cubicle. During the conversation, Mr. Olvera told Ms. Lopez that he did not want to seeher anymore because he wanted Plaintiff. In response, Ms. Lopez stated "So you used me? Does this mean you are going to stop helping me get more benefits and less work?" Mr. Olvera responded "Yes." After Mr. Olvera discovered that Plaintiff overheard the conversation, he attempted to solicit an intimate relationship in exchange for benefits and less work.

25.     On June 21, 2019, Ms. Reynolds issued Plaintiff a Decision to Reprimand.

26.     On or about July 1, 2019, Plaintiff received her Midterm Review results with degrading comments, abusive comments, and derogatory comments added by Mr. Zuniga and Ms.Reynolds.

27.     On December 6, 2019, Plaintiff was rated by Mr. Zuniga as "2" (minimally successful) for Performance Objectives 1 (FMS Logistics Management Specialist TechnicalExpertise) and 3 (FMS COMSEC Repair & Amp. Return Support) and for Performance Element 1 (Accountability for Results). Plaintiff was also rated by Mr. Zuniga as "3" (successful) for Performance Objective 2 (CPSD FMS Logistics Management Activities) and for Performance Elements 2 (Communication), 3 (Critical Thinking), 4 (Personal Leadership and Integrity), and 5(Technical Expertise). Plaintiff's average Performance Objective rate was 2.3 and her average Performance Element rating was 2.8. Plaintiff's overall rating was 2.5 and was rated with a Performance Evaluation of Record of 2 (minimally successful).

28.     On December 10, 2019, Plaintiff responded to her Performance Rating via e-mail per the Informal Resolution Process and stated she disagreed with the rating. Plaintiff requested tohave her "Minimally Successful" rating changed to "Successful". Additionally, Plaintiff stated why her

Performance Objectives and Performance Elements warranted a change in rating. Plaintiff also requested the removal of a comment made regarding her Performance Element 1.

29.     On December 19, 2019, Mr. Salas responded to Plaintiff's request for informal reconsideration. Mr. Salas agreed to remove the comment made on Plaintiff's Performance Element 1 but stated the ratings would stand as is.

30.     That same day, Plaintiff met with Mr. Salas. During the meeting, Mr. Salas told Plaintiff that Ms. Lopez would get angry with him if he made any changes to Plaintiff's ratings. Additionally, Mr. Salas told Plaintiff that Mr. Zuniga told him he could inflict additional stress on Plaintiff if Plaintiff questioned her Annual Appraisal and/or workload. Mr. Salas informed Plaintiff to file a Formal Administrative Reconsideration Process Request in order to challenge Plaintiff's Annual Appraisal.

31.     On January 2, 2020, Plaintiff submitted a Formal Reconsideration Request in order to change the ratings in all Performance Objectives and Performance Elements for an overall rating of 4 (excellent).

32.     On March 5, 2020, Colonel Allan Carreiro (hereinafter "Mr. Carreiro"), Senior Material Leader for the Cryptologic and Cyber Systems Division, sent Plaintiff his Formal Reconsideration Decision. Mr. Carreiro stated that for all but one rating area, there was no justification to alter the ratings. Mr. Carreiro changed her Performance Objective 3 to a rating of 3 (successful). Mr. Carreiro noted that no other ratings would be adjusted and no supervisor comments would be removed.

33.     On November 2, 2020, Plaintiff was forced to make a lateral move from HNC-CPF to HNC-PSM, which became effective on November 9, 2020, by her second level supervisor, Carl Salas.

34.     On December 10, 2020, Plaintiff received a notice of proposed removal with an attached memorandum for record, dated October 26, 2020, from her supervisor, Carl Salas. In the memorandum, Mr. Salas makes discriminatory comments and spoke against her. Thereafter, Plaintiff received unacceptable overall ratings and narratives.

35.     On January 27, 2021, Carl Salas, refused to discuss the negative ratings with Plaintiff, and failed to provide her with any supporting documents that would back up the negative ratings.

36.     On February 11, 2021, Plaintiff was terminated without any reason.

37.     In 2019 and 2020, Plaintiff filed multiple EEO Complaints towards the end of her tenure. Plaintiff complained that she was being discriminated and retaliated against because of her age, race, sex, and disability. Plaintiff's complaints went through the investigation phase, but while they were pending Plaintiff's work environment worsened. Specifically, on January 11, 2021, Plaintiff contacted JBSA-Lackland EO office complaining of further discrimination and retaliation. One month later, Plaintiff's employment was terminated. Based on the close nexus in time between Plaintiff's complaints, and her termination creates inferences of retaliation.

## IV. <u>CLAIMS</u>

### COUNT 1 - TITLE VII GENDER DISCRIMINATION

38.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

39.     Defendant intentionally engaged in unlawful employment practices of discrimination against Plaintiff on the basis of Plaintiff's gender (i.e. female).

40.     Plaintiff is a member of a protected class, female, and she was otherwise qualified for the position she was holding with Defendant.

41.     Defendant discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment; or, limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive Plaintiff of any employment opportunity or adversely affect his status because of Plaintiff's gender (i.e. female), in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). As a result of Defendant's discrimination, Plaintiff suffered damages (in an amount that is within the jurisdictional limits of this Court.

## COUNT 2 - ADAAA DISABILITY DISCRIMINATION

42.     Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

43.     The aforementioned conduct by Defendant constitutes violations of the Americans with Disabilities Amendments Act, 42 U.S.C. § 12101 *et seq.* ("ADAAA"). Specifically, Defendant has discriminated against Plaintiff because of her disability/disabilities and denied her a reasonable accommodation in violation of 42 U.S.C. § 12101 *et seq.,* which makes it unlawful for an employer to discriminate against any individual with respect to her employment because of that individual's disability.

44.     The above-named Defendant is an employer within the meaning of the ADAAA because they employed fifteen or more employees for each working day in each of twenty or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year. Plaintiff was an "employee" as defined by the ADAAA.

45.     Plaintiff has a qualified disability under the ADAAA, or in the alternative, Defendant perceived Plaintiff to be disabled during her employment.

46.     During the time that Plaintiff was employed by Defendant, she was subjected to discrimination based on her disabilities and denied a reasonable accommodation based on her disabilities. Defendant did not have adequate policies or procedures in place to address the discrimination. This discrimination affected the terms and conditions of Plaintiff's employment, and Plaintiff was ultimately terminated, at least in part, because of her disabilities.

47.     Defendant intentionally and willfully violated the ADAAA by discriminating against Plaintiff because of her disabilities by terminating her employment and treating her less favorably compared to non-disabled employees. Plaintiff's disabilities were a determining or motivating factor in Defendant's decision to adversely affect Plaintiff's employment.

In illegally discriminating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutorily protected rights of Plaintiff.

## COUNT 3 – ADEA AGE DISCRIMINATION CLAIM

48.   Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

49.   The above-mentioned conduct by    Defendants constitutes violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Specifically, Defendant has discriminated against Plaintiff because of her age (over 40) in violation of 29 U.S.C. § 621 *et seq.,* which makes it unlawful for an employer to discriminate against any individual with respect to her employment because of that individual's age.

50.   The above-named Defendant is an employer within the meaning of the ADEA because they employed twenty or more employees for each working day in each of twenty or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year. Plaintiff was an "employee" as defined by the ADEA.

51.   During the time that Plaintiff was employed by Defendant, she was subjected to discrimination based on her age. Defendant did not have adequate policies or procedures in place to address the discrimination. This discrimination affected the terms and conditions of Plaintiff's employment, Plaintiff was ultimately terminated, at least in part, because of her age.

52.   Defendants    intentionally    and    willfully    violated    the    ADEA by discriminating against Plaintiff because of her age by terminating her employment and treating her less favorably compared to younger employees. Plaintiff's age was a determining or motivating factor in   Defendant's   decision   to   adversely   affect   Plaintiff's   employment.   In illegally

discriminating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutorily protected rights of Plaintiff.

## COUNT 4 – TITLE VII RETALIATION

53.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

54.    The aforementioned conduct by Defendants constitutes violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). More specifically, (1) Plaintiff engaged in protected activity, (2) Defendant took adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse employment action.

55.    Plaintiff exercised her rights to engage in protected activities when she (a) complained to Defendants about disability, race, and age discrimination and (b) filed a charge of discrimination with the Equal Employment Opportunity Commission and Texas Workforce Commission alleging gender, disability, race, and age discrimination and reprisal.

56.    Defendant retaliated against Plaintiff following her exercise of her protected rights to complain about discrimination by adversely affecting her employment.

57.    Causal links and a close temporal proximity exist between Plaintiff's protected activities and Defendant's termination (one-month), and other subsequent acts of retaliation. Defendant's retaliatory conduct is in violation of Title VII, the ADA, and the ADEA. Defendant intentionally and willfully violated Title VII, the ADA, and the ADEA by retaliating against Plaintiff. Defendant's acts of retaliation against Plaintiff were performed with malice and/or reckless indifference to the statutorily protected rights of Plaintiff.

58.    Plaintiff has suffered damages as a result of the retaliation.

## COUNT 5 – TITLE VII RACE DISCRIMINATION

59.    Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs as though fully set forth herein.

60.    The aforementioned conduct by Defendant constitutes violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Specifically, Defendant has discriminated against Plaintiff because of her race (Caucasian/Hispanic) in violation of 42 U.S.C. § 2000e, *et seq.,* which makes it unlawful for an employer to discriminate against any individual with respect to her employment because of that individual's race.

61.    The above-named Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964 because they employed fifteen or more employees for each working day in each of twenty or more calendar weeks during the year in which Plaintiff was terminated, or in the preceding calendar year. Plaintiff was an "employee" as defined by Title VII.

62.    During the time that Plaintiff was employed by Defendant, she was subjected to discrimination based on her race and/or color. Defendant did not have adequate policies or procedures in place to address the discrimination. This discrimination affected the terms and conditions of Plaintiffs employment, and Plaintiff was ultimately terminated, at least in part, because of her race and/or color.

63.    Defendant intentionally and willfully violated Title VII by discriminating against Plaintiff because of her race and/or color by terminating her employment. Plaintiff's race and/or color was a determining or motivating factor in Defendant's decision to adversely affect Plaintiff' semployment. In illegally discriminating against Plaintiff, Defendant acted with malice and/or reckless indifference to the statutorily protected rights of Plaintiff.

## V. <u>JURY DEMAND</u>

64.        Plaintiff demands a jury on all issues to be tried in this matter. As such, Plaintiff submits a jury demand and herein submits the jury fee.

## VI. <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear, and answer herein, and that on final trial, Plaintiff has a judgment against Defendant for the following:

- a.   All damages that Plaintiff may be entitled to pursuant to this Original Complaint, or any amendments thereto, including (but not limited to) back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

- b.   Compensatory damages, including (but not limited to) emotional distress;

- c.   Past, present, and future physical pain and mental suffering;

- d.   Punitive damages;

- e.   Liquidated damages;

- f.   Reasonable attorneys' fees, as allowed by law (with conditional awards in the event of appeal);

- g.   Pre-judgment interest (at the highest rate permitted by law);

- h.   Post-judgment interest from the judgment until paid (at the highest rate permitted by law);

- i.   Costs of Court; and

- j.   Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any proper amendments

thereto.

Respectfully Submitted,

 Kennard Law P.C.

_____

Alfonso Kennard Jr.
Texas Bar No.: 24036888
Western District No.: 713316
alfonso.kennard@kennardlaw.com
5120 Woodway Dr., Suite 10010
Houston Texas 77056
Tel.: (713) 742 -0900
Fax: (832) 558 -9412

**ATTORNEY FOR PLAINTIFF**