# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

**JOANN SMITH,**

    *Plaintiff*,

v.                                          **Case No. SA-21-CV-1154-JKP-RBF**

**FRANK KENDALL, Secretary of the
Air Force,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendant's Motion to Dismiss* (ECF No. 21). Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), Defendant seeks to dismiss *Plaintiff's Third Amended Complaint* (ECF No. 17) on a number of grounds. With the filing of Plaintiff's response (ECF No. 24) and Defendant's reply brief (ECF No. 27), the motion became ripe for ruling. For the reasons that follow, the Court grants the motion.

### I. BACKGROUND[1]

The facts of this case begin on December 18, 2018, when Plaintiff interviewed for a position at Lackland Airforce Base. *See* Pl.'s Third Am. Compl. ("TAC") ¶ 7. After the conclusion of questioning, Plaintiff took a drink of water and Section Chief Salazar "told the panel that '[Plaintiff] had to drink some water right now because she is disabled.'" *Id*. The next month, Plaintiff reported the incident to a Second Level Supervisor ("Reynolds"). *Id*.

Plaintiff contends that she "was subjected to retaliation" on January 16, 2019, "when she was forced to take a urine test after her repeated refusals to the sexual advances by . . . [a] Program Manager and co-worker [(Olvera)]." *Id*. ¶ 8. Later that day, after she overheard a conversation

---

[1] The Third Amended Complaint provides the background facts, which the Court views in the light most favorable to Plaintiff as required under Fed. R. Civ. P. 12(b)(6).

between Olvera and an Acting Section Chief ("Frei") about whether Plaintiff would want to go out with Olvera, Frei told Plaintiff that she cannot go out with Olvera because she is "mixed." *Id*. ¶ 9. That same day, Frei stated, "I got her now," when he and another Acting Second Level Supervisor ("Salas") "assumed Plaintiff was getting a divorce because" she was not wearing her wedding band. *Id*. ¶ 10. During a Christmas Luncheon that same day, Frei "inappropriately stared at Plaintiff's breasts." *Id*. ¶ 11. Plaintiff reported this latter incident two days later to Reynolds. *Id*.

The following incidents occurred in February 2019: (1) a contractor called a female coworker to convince the coworker "to tell Plaintiff to have intercourse with Mr. Olvera"; (2) the contractor said he wanted to call Plaintiff's husband to tell him that he, "Olvera, and other men at work wanted her"; (3) a Logistics Management Specialist ("Flores") told Olvera, "Do not go for [Plaintiff] because she has broken injuries from an auto accident"; (4) "Olvera whistled towards the direction of the Plaintiff when she walked by [his] office"; (5) Olvera confirming to another male coworker that he had intercourse with a female coworker; and (6) Reynolds issuing an Oral Admonishment to Plaintiff addressing Plaintiff's objection to rumors about her marriage. *Id*. ¶¶ 12-16. The third incident "implied to Plaintiff that her co-workers and supervisors discriminated against her based on a perceived disability." *Id*. ¶ 13. Similar incidents occurred in April 2019. *Id*. ¶¶ 17-19.

On May 6, 2019, Salas and another supervisor ("Zuniga") "issued Plaintiff a Proposed Reprimand Action." *Id*. ¶ 20. Four days later Zuniga and Frei "issued Plaintiff a Verbal Counseling Memorandum for Record." *Id*. ¶ 21. "Shortly after, Mr. Zuniga pointed his finger at Plaintiff with his thumbs up, winked at Plaintiff, and said 'Yes.' to Mr. Carlos Ramirez, co-worker, as he was walking by. In response, Plaintiff stated 'No' and shook her head in a declining manner." *Id*. Later that day, a female coworker told Plaintiff that her constant refusals to Olvera's sexual advances resulted in Plaintiff's assignment of "a heavy workload." *Id*. ¶ 22. Two similar incidents occurred later in May culminating in Olvera "attempt[ing] to solicit an intimate relationship in exchange for

2

benefits and less work." *Id*. ¶¶ 23-24.

Reynolds issued "Plaintiff a Decision to Reprimand" on June 21, 2019. *Id*. ¶ 25. Plaintiff received a Midterm Review on or about July 1, 2019, that contained degrading, abusive, and derogatory comments added by Zuniga and Reynolds. *Id*. ¶ 26. In December 2019, Zuniga gave Plaintiff an overall rating of "minimally successful." *Id*. ¶ 27. Plaintiff responded to her rating in accordance with an "Informal Resolution Process" resulting in the removal of one comment but keeping the rating as minimally successful. *Id*. ¶¶ 28-29. On December 19, 2019, Salas told Plaintiff that another female worker "would get angry with him if he made any changes to Plaintiff's ratings." *Id*. ¶ 30. Salas also told her that Zuniga had told him that "he [(Zuniga)] could inflict additional stress on Plaintiff if Plaintiff questioned her Annual Appraisal and/or workload." *Id*. Salas further told Plaintiff to "file a Formal Administrative Reconsideration Process Request" if she wanted to challenge her annual appraisal. *Id*.

Plaintiff pursued that formal process in January 2020, resulting in a change to one performance objective rating in March 2020. *See id*. ¶¶ 31-32. Salas forced Plaintiff to make a lateral move in November 2020. *Id*. ¶ 33. The next month, "Plaintiff received a notice of proposed removal with an attached memorandum for record, dated October 26, 2020, from her supervisor, Carl Salas." *Id*. ¶ 34. The memorandum includes "discriminatory comments" by Salas, and Plaintiff thereafter "received unacceptable overall ratings and narratives." *Id*.

On January 11, 2021, Plaintiff contacted an Air Force "EO office complaining of further discrimination and retaliation." *Id*. ¶ 37. On January 27, 2021, Salas refused to discuss the negative ratings he gave Plaintiff. *Id*. ¶ 35. "On February 11, 2021, Plaintiff was terminated without any reason." *Id*. ¶ 36.

Plaintiff further states that "[i]n 2019 and 2020, [she] filed multiple EEO Complaints towards the end of her tenure." *Id*. ¶ 37. She contends: "Based on the close nexus in time between [her] complaints, and her termination creates inferences of retaliation." *Id*.

3

Plaintiff sues Defendant only in his official capacity as Secretary of the United States Air Force. *See id.* ¶ 3. Defendant is thus the United States of America. *See id.* ¶ 4. Plaintiff brings this case under three federal statutes: Title VII of the Civil Rights Act of 1964 (as amended), codified in 42 U.S.C. § 2000e, et seq. (hereinafter "Title VII"); Americans with Disabilities Amended Act ("ADAA"), 42 U.S.C. § 12101 et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. *See id.* ¶ 5. As set forth in the cited paragraphs of her Third Amended Complaint, she asserts claims of gender discrimination (Count 1, ¶¶ 38-41), ADAA disability discrimination (Count 2, ¶¶ 42-47); ADEA age discrimination (Count 3, ¶¶ 48-52); Title VII retaliation (Count 4, ¶¶ 53-58); and Title VII race discrimination (Count 5, ¶¶ 59-63).

Pursuant to Fed. R. Civ. P. 12(b)(1), Defendant moves to dismiss the ADAA claims for lack of jurisdiction and seeks dismissal of all other asserted claims pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a claim upon which relief can be granted. *See*, *generally*, Mot. In her response, Plaintiff concedes a lack of jurisdiction over her ADAA claim and states she anticipates filing another amendment to remove that claim and to assert disability discrimination claims under the Rehabilitation Act ("RA"), 29 U.S.C. § 794. *See* Resp. at 1. Her response clearly identifies her termination as the only adverse action taken against her. *See id.* at 6-8. In addition, she identifies her claims as (1) Title VII retaliation based on the filing of multiple EEO complaints between 2019 and 2021, including her formal complaint of discrimination on January 11, 2021; (2) Title VII discrimination based on her gender (female); (3) RA discrimination based on a perceived disability; and (4) discrimination under the ADEA based upon her age. *Id*. She no longer appears to pursue a Title VII discrimination claim based on her race. Furthermore, she premises each of her discrimination claims on being treated differently from other employees outside her protected classes. *Id*. She urges the Court to deny the motion to dismiss because she has stated claims upon which relief can be granted. *See id*. 2-10.

Defendant thereafter filed its reply (ECF No. 27). The motion is ripe for ruling.

4

## II. JURISDICTION

As stated by Defendant, this Court lacks jurisdiction over any ADAA claim against the United States. By statute, "the entire federal government is excluded from the coverage of the ADA." *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003) (citing 42 U.S.C. § 12111(5)(B)). Instead, "[t]he Rehabilitation Act is the exclusive remedy for federal employees claiming disability discrimination." *Carter v. Ridge*, 255 F. App'x 826, 829 (5th Cir. 2007) (per curiam). Accordingly, the Court grants the Rule 12(b)(1) portion of the motion without further consideration.

Nevertheless, as mentioned earlier, Plaintiff intends to rely on the RA rather than the ADAA. Despite the different statutory basis, the standards under the ADA govern any inquiry into Rehabilitation Act allegations. *See Pinkerton v. Spellings*, 529 F.3d 513, 516-17 (5th Cir. 2008). The Court thus focuses on Rule 12(b)(6) for all claims including the proposed RA claim.

## III. LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). Nevertheless, when a pleading refers to documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). It is also "clearly proper . . . to take judicial notice of matters of public record" when deciding a Rule

5

12(b)(6) motion. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

Here, Plaintiff did not attach any documents to her complaint. And Defendant attached no documents to its motion. However, in response to the motion, Plaintiff attaches documents to support her allegation that between 2019 and 2021 she filed multiple "EEO complaints." Resp. at 4-5. She contends that the attached exhibits show filings on June 27, 2019; January 31, 2020; September 10, 2020; and January 13, 2021. *Id*. at 5. Plaintiff's reliance on these documents prompted Defendant to attach a document to its reply brief. *See* Reply at 1-2. Defendant contends that, in her Third Amended Complaint, Plaintiff specifically references her January 2021 EEO complaint and makes general allegations of unspecified other prior complaints. *Id*. at 2. It further contends that Plaintiff argues that she has exhausted her administrative remedies and such exhaustion is central to the Court analyzing whether her claims are subject to dismissal. *Id*. It submits that its attachment shows "that Plaintiff made initial contact with the EEO office on January 13, 2021, and complained of the same set of facts on which she now sues." *Id*.

The submission of these documents prompts consideration of Fed. R. Civ. P. 12(d), which provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

If the Court concludes that the attached documents constitute a matter outside the pleadings and does not exclude them, Rule 12(d) mandates that the Court treat the motion to dismiss as one for summary judgment. But the decision to accept or reject a proffered matter outside the pleadings is within the court's "complete discretion." *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193-94 & n.3 (5th Cir. 1988).

The attached documents relate to whether Plaintiff has exhausted her administrative remedies. Although courts generally do not evaluate affirmative defenses, such as exhaustion, "at

6

the motion to dismiss stage, [such defenses] may serve as the basis for dismissal if the affirmative defense is apparent from the face of the complaint." *Aetna Inc. v. People's Choice Hosp., LLC*, No. SA-18-CV-00323-OLG, 2019 WL 12536914, at *6 (W.D. Tex. Sept. 30, 2019). In the employment context, a failure to exhaust is an affirmative defense. *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 n.3 (5th Cir. 2019). When plaintiffs reference a filed EEOC charge and attach it to their complaint and reference a written reprimand that the defendant attaches to a motion to dismiss, the Court may consider such documents without converting a Rule 12(b)(6) motion to one for summary judgment. *McClure-Soto v. Bexar Cnty.*, No. SA-21-CV-00660-JKP, 2022 WL 180279, at *3 (W.D. Tex. Jan. 18, 2022). The question here is whether the Court may also refrain from such conversion if it considers similar documents provided with a response and reply. The Court will address this question later as needed.

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted. *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, plaintiffs must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

7

Plaintiffs need not plead the legal basis for a claim, but they "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). And they satisfy that standard when they allege "simply, concisely, and directly events" that are sufficient to inform the defendant of the "factual basis" of their claim. *Id*.

Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice. Thus, though [courts] generally take as true what a complaint alleges, [they] do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

*Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the plaintiff will ultimately prevail, but whether the Court should permit that party to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Further, determining plausibility is a "context-specific task," that courts perform in light of their "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Additionally, while asserted defenses may support dismissal under Rule 12(b)(6), they only do so when the operative "pleading conclusively establishes the affirmative defense." *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013) (addressing res judicata defense). Although defendants may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions.

### IV. ANALYSIS

Defendant does not contest that Plaintiff "is a woman over 40 who is of mixed white and

8

Hispanic heritage." Mot. at 9 n.4. Nevertheless, it argues that each of Plaintiff's claims fail for multiple reasons. *Id*. at 7. First, it argues that an administrative bar applies to claims that Plaintiff failed to timely raise during the administrative process. *Id*. More particularly, it argues that "any claims arising out of . . . inappropriate sexual advances from 2019 should be dismissed because Plaintiff did not comply with the required administrative timeline." *Id*. Second, it argues that her various discrimination claims fail for lack of facts from which the Court can reasonably infer a plausible claim that Defendant terminated Plaintiff because of her protected statuses. *Id*. at 8. Next, Defendant argues that Plaintiff's disability claim fails because Plaintiff fails to provide facts to establish that she is disabled or was perceived as disabled. *Id*. at 9. As for Plaintiff's retaliation claim, Defendant argues that such claim fails for lack of factual allegations of a causal link between Plaintiff's participation in protected activity and any adverse employment action. *Id*. at 11-12.

**A. Disability Discrimination**

The Court first addresses Plaintiff's disability claim. Although she concedes a lack of jurisdiction over her asserted ADAA claim, she indicates an intent to amend to state a disability claim under the RA.

To state a disability claim, one must have a disability. *See Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 526 (5th Cir. 2022) (setting out elements of an ADA claim). In general, the RA defines disability as "a physical or mental impairment that constitutes or results in a substantial impediment to employment." 29 U.S.C. § 705(9)(A). But "for purposes of sections 701, 711, and 712 of [Title 29] and subchapters II, IV, V, and VII," disability is defined as in 42 U.S.C. § 12102. *Id*. § 705(9)(B).

Under § 12102, "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). In general, "major life activities include, but are not limited to, caring for oneself, performing manual

9

tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id*. § 12102(2)(A). But "a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id*. § 12102(2)(B). An individual is "regarded as having such an impairment" within the meaning of paragraph (1)(C) when "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id*. § 12102(3)(A). As stated by the Fifth Circuit:

> A plaintiff is "regarded as" being disabled if he "(1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment."

*EEOC v. E.I. Du Pont de Nemours & Co.*, 480 F.3d 724, 729 (5th Cir. 2007) (quoting *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 657 (5th Cir. 2003)). Regardless, paragraph (1)(C) does "not apply to impairments that are transitory and minor." 42 U.S.C. § 12102(3)(B). If an impairment has "an actual or expected duration of 6 months or less," then it is transitory. *Id*.

Plaintiff provides no factual allegations from which the Court can reasonably infer that she is disabled. She alleges no facts to infer any substantial impediment to employment. Nor does she allege facts from which the Court can infer that she has any impairment that substantially limits any major life activity. She alleges no facts to support an inference that there is a record of such an impairment or that her employer regarded her as having such an impairment. At most, she alleges that, during an interview in 2018, someone mentioned that she needed to drink water because she was disabled and then two months later someone mentioned that she had injuries from

a car accident. These comments do not support a reasonable inference that her employer regarded her as having any substantially limiting impairment.

Plaintiff does not indicate that she has additional facts that she intends to allege through another amended complaint. Instead, she appears content to rely on the existing alleged facts as they would relate to an RA claim. Because the alleged facts are insufficient to state a plausible claim under the RA, the Court declines to permit Plaintiff's proposed amendment.

**B. Other Discrimination Claims**

Defendant argues that Plaintiff's discrimination claims fail because she has alleged no facts from which the Court can reasonably infer a plausible claim that Defendant terminated her because of any protected status. This argument does not prompt consideration of any submitted documents.

Unquestionably, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). As determined by the Fifth Circuit, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citations and internal quotation marks omitted). Furthermore, because requirements for stating Title VII and ADEA discrimination claims "are essentially the same," courts "analyze them together." *Meinecke v. H &R. Block of Houston*, 66 F.3d 77 (5th Cir. 1995) (per curiam).

From Plaintiff's factual allegations, the Court finds only one adverse employment action – Plaintiff's termination in February 2021. This is consistent with her filed response. To constitute an adverse employment action, the action must "affect job duties, compensation, or benefits." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). Adverse employment actions are limited to "ultimate employment decisions such as hiring, firing, demoting, promoting, granting

11

leave, and compensating." *Id*. (citations and internal quotations omitted). Although "a transfer or reassignment can be the equivalent of a demotion, and thus constitute an adverse employment action," the new position must "result in a decrease in pay, title, or grade" or be "objectively worse – such as being less prestigious or less interesting or providing less room for advancement." *Id*. (quoting *Alvarado v. Tex. Rangers*, 492 F.3d 605, 613 (5th Cir. 2007)). Even though Plaintiff alleges that she was forced to make a lateral transfer in November 2020, she provides no factual allegations to reasonably infer that this transfer is the equivalent of a demotion. Nor does she rely upon the transfer as an adverse employment action.

Given the single alleged adverse employment action, the Court considers whether Plaintiff makes enough factual allegations to support a reasonable inference that Defendant terminated her because of a protected status. First, not only has Plaintiff abandoned any race discrimination claim, but her allegations do not support a reasonable inference that Defendant terminated her in February 2021 because of her race. Similarly, she has no allegations to support a reasonable inference that Defendant terminated her because of her age. The Court thus dismisses Plaintiff's race and age discrimination claims.

While Plaintiff makes more allegations of misconduct concerning her gender, she still fails to provide enough factual allegations to support a reasonable inference that Defendant terminated her employment because of her gender. Based on her TAC, her gender-based allegations essentially end in May 2019, twenty-one months before her termination. Although she states that she "alleges the behavior was ongoing throughout her employment and that it was known and condoned by Defendant after [she] filed numerous complaints regarding the issue," Resp. at 10, her operative pleading does not allege facts that gender-related behavior continued through her termination. Moreover, even if such allegations existed, Plaintiff has made no factual allegation that connects her termination with her gender. She had a lateral transfer in November 2020, and Salas is the only individual alleged to have been involved with her employment both pre- and post-

transfer. But Plaintiff makes no allegation that Salas made any adverse employment action against her because of her gender. In short, her allegations are not enough to make a reasonable inference that Defendant terminated Plaintiff because of her gender. Accordingly, the Court dismisses the claim of gender discrimination.

**C. Retaliation**

A prima facie case of Title VII retaliation requires three elements – (1) engagement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021). Both sides agree that Plaintiff engaged in a protected activity on January 11, 2021, and that Defendant terminated her the next month. Whether this claim survives the instant motion to dismiss thus depends on whether Plaintiff's factual allegations are sufficient to reasonably infer the requisite causal connection. Analyzing this claim does not require consideration of any submitted documents.

At the pleading stage, plaintiffs have no need to submit evidence to show a prima facie case of retaliation. *Id*. However, to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege facts "going to the ultimate elements of the claim." *Id*. (quoting *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019)). Because causation is an ultimate element, Plaintiff must "plead facts permitting a reasonable inference that [Defendant] terminated her because" she engaged in protected activity. *See id*. At this stage, this requires Plaintiff "to allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation." *Id*. at 434.

With respect to adverse employment decisions, courts "look to who actually made the decision or caused the decision to be made, not simply to who officially made the decision." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000) (addressing decisionmaker in context of age discrimination). Defendant contends that Plaintiff's failure to allege who made the termination decision is fatal to her retaliation claim. Mot. at 12.

13

Plaintiff counters that "when the temporal proximity is 'very close' proximity alone suffices to establish causation." Resp. at 6 (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). But this Court has previously addressed and rejected such a counterargument. *See Alvarado v. Tex. Health & Hum. Servs. Comm'n*, No. SA-19-CV-0106-JKP, 2022 WL 707225, at *5 (W.D. Tex. Mar. 9, 2022). Although the Court decided *Alvarado* in the context of summary judgment, its analysis applies similarly in the context of a motion to dismiss.

As noted in *Alvarado*, "for cases that accept temporal proximity, the required proximity is 'between an employer's knowledge of protected activity and an adverse employment action.'" *Id*. at *5 (quoting *Breeden*, 532 U.S. at 273). "Without knowledge of the protected activity, temporal proximity standing alone is insufficient to show a causal link." *Alvarado*, 2022 WL 707225, at *5. Although Plaintiff relies on the fact that the termination occurred within a month of her formal EEOC complaint, the absence of any allegation that Defendant had the requisite knowledge of that protected activity "prevents use of temporal proximity to show a causal link as Plaintiff wants." *See id*. This holds true even if the protected activity was Plaintiff's earlier alleged internal EEO complaints. *See Wright*, 990 F.3d at 433 (recognizing that an "internal EEO complaint" constitutes protected activity).

Plaintiff further argues that she relies on more than mere temporal proximity because she also relies on "allegations of continuous retaliatory acts (not discrete acts) that occurred, which ultimately led up to [her] termination." Resp. at 7. While the thrust of this argument is not clear, it does not change the fact that she makes no allegations of knowledge on the part of Defendant. Without factual allegations that permit a reasonable inference that Defendant knew of her protected activity, she has not made enough factual allegations concerning the causal link between her protected activity and her termination. Consequently, her retaliation claim fails to survive the instant motion to dismiss.

## V. LEAVE TO AMEND

In general, the Court considers whether it should grant a plaintiff leave to amend when it has determined that Fed. R. Civ. P. 12(b)(6) warrants dismissal. Leave to amend is not required, however, when plaintiffs have already pled their "best case." *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). *Id*. at 768. Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

In its motion, Defendant opposes another amendment. Mot. at 14. Defendant notes that, not only has Plaintiff already filed three amendments, but the attorneys conferred about the deficiencies raised in the instant motion, and Plaintiff was either unwilling or unable to cure the pleading deficiencies. *Id*. Nevertheless, in her response, Plaintiff indicates that she intends to amend her Third Amended Complaint to replace ADAA claims with claims under the RA. Resp. at 1, 7.

For efficiency purposes, the Court has already considered whether an RA claim would survive a motion to dismiss under the current factual allegations and found that such a claim would not survive. Plaintiff does not indicate that she has additional facts to change that finding. Nor does she provide any indication that she wants to amend any other claim or that she has additional factual allegations regarding such claims that could cure the pleading deficiencies found herein. In these circumstances, the Court finds that Plaintiff has pled her best case. Accordingly, it declines to grant Plaintiff leave to file a fourth amended complaint.

## VI. OTHER MATTERS

Given the pleading deficiencies considered by the Court, it finds no need to address whether Plaintiff has exhausted her administrative remedies. Consequently, it has no need to consider the documents provided by the parties with their briefing. Accordingly, it declines to accept or consider them. It thus has no need to consider whether it should convert the instant

motion to dismiss to one for summary judgment under Fed. R. Civ. P. 12(d).

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** *Defendant's Motion to Dismiss* (ECF No. 21). It dismisses Plaintiff's claims under the Americans with Disabilities Amended Act without prejudice for lack of jurisdiction. It dismisses her other claims with prejudice for her failure to state a plausible claim upon which the Court can grant relief. It will separately issue a final judgment in accordance with Fed. R. Civ. P. 58.

**It is so ORDERED this 14th day of July 2023.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**